Adam Ford (NYB #4115531)
FORD & HUFF LC
228 Park Avenue South
New York, NY 10036
Telephone: (212) 287-5913
Email: adam.ford@fordhufflaw.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN GANNON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUA DA INC., BIG FAMOUS 1 DELI & GROCERY INC., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown,<br><br>Defendants. | **COMPLAINT**<br><br><br>Case No. 1:22-cv-1650<br><br><br>**CLASS ACTION**<br><br>**JURY DEMANDED** |

## <u>CIVIL COMPLAINT</u>

Plaintiff, STEPHEN GANNON, by and through his attorney Adam Ford of Ford & Huff LC, hereby files complaint against HUA DA INC. and BIG FAMOUS 1 DELI & GROCERY INC. and alleges as follows:

## INTRODUCTION

1.      This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, controlled, managed, or operated, by the Defendants.

2.      The Plaintiff files this class action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3.      The Plaintiff seeks compensatory, statutory and punitive damages, including, but not limited to, damages for personal injuries, pain of body and mind, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against the Defendants, as well as such other relief as the Court deems to be just and proper.

## PARTIES

4.     Plaintiff is, and has been at all times material hereto, a resident of NEW YORK COUNTY, NEW YORK.

5.     Plaintiff is disabled and is authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

6.     Plaintiff is representative of the class of individuals harmed by the violations of law bought in this Complaint and his experiences and injuries are common in law and fact to other class members and is prepared to work with counsel to pursue the interests of the larger class.

7.     The Defendants, own, and/or lease, and/or have control over, and/or manage, and/or maintain, and/or designed, and/or built, and/or constructed, and/or altered, and/or operate, and at all relevant times operated, CHELSEA DELI & CAFE, located at 130 9th Ave, New York, NY 10011 (hereinafter referred to as "Subject Facility").

8.     Defendant HUA DA INC., "Property Owner", a business corporation, organized under the laws of New York, owns, and/or leases, and/or manages, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the Subject Facility.

9.     Defendant BIG FAMOUS 1 DELI & GROCERY INC., "Tenant", a business corporation, organized under the laws of New York, and currently is, either an owner, landlord, lessor, lessee, and/or operator of the commercial space, on which the Subject Facility is located, and of the space in which it operates.

10.     Property Owner, leases or rents its space, building and/or land, on which the Subject Facility is located, to the Tenant.

11.     The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

12.     Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the space on and/or in which the Subject Facility is located. Either one or several of them might be a landlord and lease the Subject Facility to the Defendants, or a tenant or subtenant of the Defendants.

13.     The Plaintiff reserves the right to amend this Complaint to add such persons or entities as Defendants when discovered during the course of this action.

14.     The Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration and/or operation of the Subject Facility.

## JURISDICTION AND VENUE

15.     This Federal Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the Plaintiff's rights under the ADA.

16.    This Court has supplemental jurisdiction over the Plaintiff's allegations arising from the Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

17.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the Defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## CLASS ACTION

18.    The Plaintiff brings this suit for declaratory and injunctive relief and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all those similarly situated who, as persons who must use wheelchairs or walkers or similar mobility aids due to various disabilities, and who use or desire to use the services and accommodations offered to the public by the Defendants. All members of the class are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

19.    The Plaintiff, complaining for himself, and all other similarly situated disabled individuals hereby alleges the following:

   a.    The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b.    There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

   c.    The claims or defenses of the representative party are typical of the claims, or defenses, of the class;

d.   The representative party will fairly and adequately protect the interests of the class; and

e.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

20.   The claims of the Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

21.   The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Rule 23(g) of the Federal Rules of Civil Procedure, they have retained, and are represented by experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who is willing to represent the Plaintiff in complex class action litigation, and because the Plaintiff has no interests antagonistic to the members of the class.

22.   A class action may be maintained under Rule 23(a) of the Federal Rules of Civil Procedure prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the Defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress,

inconvenience and humiliation, which the class members have suffered as a result of the Defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

23.    Class certification of the claims is appropriate pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

24.    Alternatively, class certification is appropriate Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

25.    Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs this jurisdiction.

26.    Clarity, consistency and uniformity in law will also be preserved, as maintenance of this lawsuit as a class action will likely eliminate the possibility of inconsistent verdicts, which may be issued, if plaintiffs were to initiate individual lawsuits against the Defendants.

27.    References to the Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

28.     On July 26, 1990, Republican President George H. W. Bush, who would later end in using a wheelchair himself later in life, signed the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation. The bill had been championed by Sen. Robert Dole, who had suffered significant disability related to injuries sustained in Italy fighting Nazis during World War II.

29. The ADA itself states the need for its passage, with Congress finding that:

> (1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

> (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

> (3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

> (4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

> (5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. §12101(a)(1)-(8)

30. Furthermore, Congress also explicitly stated that the purpose of the ADA was:

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

U.S.C. §12101(b)(1)-(4)

31.    Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the intent of the law was to ensure that no place of public accommodation would discriminate against an individual on the basis of disability, so that all could have the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

9

32.     The law provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

33.     The 2000 United States census indicated that more than 49.7 million people in the United States had a disability. The 2000 United States census also indicated that more than 1.39 million New Yorkers live with a mobility disability.

34.     The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

35.     It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

36.     Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (ADAAG), 28 CFR §36.504(a)(3)(ii), under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

37.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements –

both scoping and technical – for newly designed and constructed, or altered … public

accommodation, and commercial facilities to be readily accessible to and usable by individuals

with disabilities." Id. The DOJ provided that document in one publication and it includes the

2010 Standards for public accommodation and commercial facilities, which consist of the Title

III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191,

appendices B and D.

38.     The landlord, who owns the building that houses a place of public

accommodation and the tenant, who owns, or operates the place of public accommodation, each

have an individual and non-delegable duty to comply with the ADA, the New York State Civil

Rights Laws, the New York State Human Rights Laws and the New York City Human Rights

Laws. 28 CFR §36.201(a) and (b)

39.     The Subject Facility affects interstate commerce within the meaning of the ADA.

42 U.S.C. §12181(7)( E) and 28 CFR §36.104 Place of public accommodation (5).

40.     Regardless of any contractual provisions stating otherwise, the landlord and

owner of the Subject Facility cannot escape liability for the tenant's failure to comply with the

ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the

New York City Human Rights Laws. 28 CFR §36.201.

41.     One type of disability discrimination is the failure of an owner, or an operator, of

a public accommodation to remove those architectural barriers, removal of which is readily

achievable.

> A public accommodation shall remove architectural
> barriers in existing facilities, including communication
> barriers that are structural in nature, where such removal is

> readily achievable, i.e., easily accomplishable and able to
> be carried out without much difficulty or expense.

28 FR §36.304

42.     If an individual with a disability is dissuaded from entering, or receiving services

of a place of public accommodation, because of the existence of an architectural barrier, the

landlord and tenant will be guilty of discrimination on the basis of disability regardless of intent.

Discriminatory intent is not required to establish liability under the ADA, the New York State

Civil Rights Laws, the New York State Human Rights Laws and the New York City Human

Rights Laws.

43.     The Defendants must remove all barriers, removal of which is readily achievable,

that deny an individual with a disability the opportunity to participate in, or benefit from,

services, or accommodations, on the basis of their disability. 28 CFR §36.304

44.     Removal of the architectural barriers, violations of the ADA and ADAAG at the

Subject facility set forth herein, are readily achievable by the Defendants.

45.     The Subject Facility has begun operations, and/or undergone substantial

remodeling, repairs and/or alterations in the 32 years since January 26, 1990, and/or has

sufficient income and/or assets to make accessibility modifications readily achievable.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Violations of the ADA

46.     The Plaintiff, Stephen Gannon, was diagnosed with Metatarsal Osteomyelitis of

the right foot in 2017. To stop the infection and preserve his life, Stephen's right leg was

amputated just below the knee on June 2, 2019. Since the amputation, Stephen has used a

manually powered wheelchair for mobility. In addition to the challenges associated with being a wheelchair user, Stephen suffers phantom limb pain.

47.    The Plaintiff is disabled under the law, which in pertinent part states that

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

CFR §36.104

48.    The Subject Location is a deli and grocery located on the ground floor of a 4-story building in the heart of Chelsea in midtown Manhattan, one of the most expensive and exclusive real estate markets in the world. The entrance to the Subject Location is a cement entrance rising approximately 30 inches and running approximately 3 feet in length. The slope of the entrance is a remarkable 28.5%.

49.    This steep slope along the accessible route violates ADAAG Sections 402.2 and 403.3 which mandate that the running slope be not steeper than 1:20 (5%) along an accessible route.

50.    Were the accessible route to be deemed a ramp, it violates ADAAG Section 405.2 in that it has a rise of greater than 3 inches and a slope greater than 1:10 or 10%.

51.    The entrance to the Subject Location does not have any maneuvering clearance--the slope terminates at the threshold of the door. The door at pulls open away from the building.

52.    This lack of maneuvering clearance means that the entrance does not comply with ADAAG Section 404.2.4.3.

53.     This lack of a level threshold also violates ADAAG's requirement that there be at least a 60-inch perpendicular maneuvering clearance and an 18-inch parallel maneuvering clearance when the approach direction is from the front of a pull door (see figure 404.2.4.1(a)).

54.     If the route to the door were to be considered a ramp, pursuant to ADAAG Section 505.2 handrails would be required along both sides of the ramp.

55.     There are no handrails along the accessible route/ramp at the Subject Location.

56.     At the door threshold at the Subject Location there is a 90-degree step-up from the top of the ramp to the metal bottom of the door frame of greater than 1 inch.

57.     The Subject Location is therefore not accessible under ADAAG as it violates Section 303.2 which requires any vertical changes in level to be less than 1/4 inch high along the accessible route.

58.     Pursuant to Section 303.4 of ADAAG any change in level greater than 1/2 inch must be ramped and the ramp must comply with Section 405.

59.     The check-out counter at the Subject Location stands at a height of greater than 50 inches from the floor.

60.     Pursuant to Section 904.3.2 of ADAAG, a check-out counter may not exceed 38 inches above the floor, therefore the check-out counter at the Subject Location is in violation of the ADA.

61.     The Plaintiff has encountered the violations of the ADA and ADAAG at the Subject Facility and has experienced difficulty gaining access to the Subject Facility, because of the unlawful architectural barriers, and therefore suffered an injury in fact.

62.    The Defendants are engaging in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

63.    The Plaintiff has difficulties visiting the Defendants' Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws.

64.    The barriers to access the Subject Facility have effectively denied the Plaintiff ability to visit the property and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

65.    Because the Subject Facility is a public accommodation, the Defendants are responsible for complying with the ADA. 28 CFR §36.304

66.    The architectural barriers to access the Subject Facility have endangered the Plaintiff's safety.

67.    The Defendants are discriminating against the Plaintiff, and others similarly situated, because at their Subject Facility they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed above.

68.    The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the

Defendants' Subject Facility in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

69.     The Defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv). The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

70.     The Defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

71.     Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, the Defendants were required to make their Subject Facility accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, the Defendants have failed to comply with that mandate.

72.     The Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

73.     It was not structurally impracticable for the Defendants to make the Subject Facility accessible.

16

74.    Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by the Defendants.

75.    The Defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

76.    Accommodations to the Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by the Defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

77.    The Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA in connection with the Subject Facility.

78.    The Defendants' failure to make their Subject Facility accessible denied the Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

79.    The effect of the practices complained of has been to deprive the Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facility and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by the Defendants.

80.    The Defendants' Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

81.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, the Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

82.    The Defendants' flagrant disregard for the law, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing the Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against the Plaintiff, and other similarly situated individuals.

83.    The inexcusability of the Defendants' actions is exacerbated by the fact that 30 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred the Plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, the Defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

84.     The Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

85.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

86.     The Defendants' Subject Facility is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

87.     The Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

88.     The Defendants are in violation of the New York State Human Rights Law by denying the Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facility.

89.     The Defendants do not provide the Plaintiff, and others similarly situated, with equal opportunity to use their public accommodation.

90.     The Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

91.     As a direct and proximate result of the Defendants' unlawful discrimination, which is in violation of the Executive Law, the Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

92.     The Defendants have not provided the Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

93.     The Defendants' direct, or indirect, unequal treatment of the Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

94.     The Defendants have, because of the Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodation.

95.     The Defendants have demonstrated that the patronage, or custom, of the Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

96.     In violation of the New York State Human Rights Laws the Defendants and their agents discriminated against the Plaintiff.

97.     As a direct and proximate result of the Defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, the Plaintiff has suffered, and continues to suffer, personal injuries, such as mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

98.     The Plaintiff requests compensatory damages from each Defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

### THIRD CAUSE OF ACTION

**Violations of the New York State Civil Rights Laws**

99.     The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

100.    The Defendants have violated the Plaintiff's civil rights on the basis of his disability.

101.    Consequently, the Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each Defendant.

102.    Pursuant to the New York Civil Rights law, §40-d, the Defendants are guilty of a class A misdemeanor.

103.    Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

### FOURTH CAUSE OF ACTION

**Violations of the New York City Human Rights Laws**

104.    The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

105.    The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or

employee of any place or provider of public
accommodation:

    1. Because of any person's actual or perceived …
disability …, directly or indirectly:

        (a) to refuse, withhold from or deny to such
person the full and equal enjoyment, on
equal terms and conditions, of any of the
accommodations, advantages, services,
facilities or privileges of the place or
provider of public accommodation;

NYC Admin. Code §8-107(4)

106. The Defendants have not reasonably accommodated the Plaintiff, and other

disabled individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17),

(18), §8-107(4) and §8-107(15).

107. In violation of the New York City Administrative Code, the Defendants have

unlawfully discriminated against the Plaintiff and all others similarly situated.

108. Reasonable accommodations and modifications are necessary to enable the

Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use of the

Defendants' Subject Facility.

109. In violation of the New York City Administrative Code the owners, operators,

lessees, proprietors, managers, agents and/or employees of the Defendants' Subject Facility

have, because of the actual, or perceived, disability of the Plaintiff directly, or indirectly, refused,

withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

110. In violation of the New York City Administrative Code, on the basis of the

Plaintiff's disability, the Defendants have demonstrated that the patronage, or custom, of the

Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

111.    The Defendants are in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

112.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

113.    As a direct and proximate result of the Defendants' disability discrimination, in violation of the New York City Human Rights Laws, the Plaintiff has suffered, and continues to suffer, personal injuries, including mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

114.    The Plaintiff requests compensatory damages in the amount of $1,000 from each Defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

115.    The Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by the Defendants, pursuant to the ADA, 28 CFR §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a Plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)

## **PUNITIVE DAMAGES**

116.    The Plaintiff requests punitive damages in an amount determined by the jury from

each Defendant to compensate him for their violation of the New York City Human Rights Law.

With respect to punitive damages, "the standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Chauca v. Abraham, 885 F.3d 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30 N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard requires "a lower degree of culpability" than is required for punitive damages under other statutes, as it "requires neither a showing of malice nor awareness of the violation of a protected right." Id. (quoting Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

117.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facility until the requisite modifications are completed.

118.    The Plaintiff requests the Court to issue a permanent injunction enjoining the Defendants from disability discrimination.

119.    The Plaintiff requests the Court to issue a permanent injunction and order the Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities.

120.    The Plaintiff requests the Court to issue a permanent injunction requiring the Defendants to make all necessary modifications to the Defendants' policies, practices and procedures, so that the Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

121.    Injunctive relief is also necessary to order the Defendants to provide auxiliary aid, or service, and/or alternative methods, to allow the Plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

## DECLARATORY RELIEF

122.    The Plaintiff is entitled to a declaratory judgment affirming that the violations of the ADA, the New York State and the New York City laws committed by the Defendants exist and specifying the rights of the Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from the Defendants' Subject Facility by the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests judgment against the Defendants and that this Court grants the following relief:

A.    Certifies this case as a class action;

B.    Grants a permanent injunction

    i.) Enjoining the Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.) Requiring the Defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

    iii.) Compelling the Defendants to make all necessary modifications to their policies, practices and procedures, so that the Plaintiff would not be subject to further discrimination;

    iv.) Ordering the Defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by the Defendants, in accordance

with Title III of the ADA, the New York State Civil Rights Laws, the New York

State Human Rights Laws and the New York City Human Rights Laws; and

v.) Ordering the Defendants to make the Subject Facility readily accessible to and

usable by individuals with disabilities.

C.    Enters declaratory judgment specifying that the Subject Facility owned, operated,

leased, controlled, maintained and/or administered by the Defendants violates the

ADA, the New York State Civil Rights Law, the New York State Human Rights Law

and the New York City Human Rights Law;

D.    Enters an order requiring the Defendants to alter their Subject Facility and amenities

to make it accessible to, and usable by, individuals with disabilities to the full extent

required by Title III of the ADA, the New York State Civil Rights Laws, the New

York State Human Rights Laws and the New York City Human Rights Laws;

E.    Holds each of the Defendants liable for $500 in statutory monetary damages for each

violation of the ADA and ADAAG and awards that sum to the Plaintiff pursuant to

New York State Civil Rights Laws §40-c and §40-d;

F.    Holds each of the Defendants liable for compensatory damages in the amount of

$1,000 under the New York State Human Rights Law and the New York City Human

Rights Law.

G.    Holds each of the Defendants liable for punitive damages in an amount determined by

the jury for their violation of the New York City Human Rights Law.

H.    Finds the Defendants guilty of class A misdemeanor pursuant to New York State

Civil Rights Law §40-d;

I.  Retains its jurisdiction over the Defendants until their unlawful practices, acts and omissions no longer exist;

J.  Finds that the Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the Plaintiff, and other persons similarly situated, may be entitled; and

K.  Awards such other and further relief as it deems necessary, just and proper.

## **JURY DEMANDED**

The Plaintiff demands a trial by jury of all the issues of fact and damages.


DATED this 28th day of February, 2022.


FORD & HUFF LC


/s/ Adam Ford
Adam Ford (NYB #4115531)
*Attorney for Plaintiff*